STATE OF NORTH CAROLINA v. RENA G. SANDERS

No. 8812SC1040

(Filed 19 September 1989)

1. **Constitutional Law § 60; Jury § 7.14— peremptory challenges of black jurors on basis of race—discrimination not shown**

Defendant's right to equal protection under the Fourteenth Amendment was not violated by the State's peremptory challenges of black jurors when there were five black venire members, one of whom served on the jury, one of whom was excused for cause, and three of whom were removed through the State's peremptory challenges; the first black was excused because he had held three jobs in the preceding ten months; the second was excused because she claimed never to have participated in court proceedings when in fact she had an extensive criminal record; the third was deemed undesirable by the prosecutor because of her headstrong and overbearing personality; the trial court properly determined that these proffered reasons rebutted the prima facie case of discrimination; the record contained no discriminatory comments by the prosecutor; and defendant did not otherwise prove a case of racial discrimination.

2. **Constitutional Law § 62— racial discrimination in jury selection process—no objection at time of empanelling jury—defendant not estopped from pursuing issue of discrimination**

   The State could not claim that defendant was estopped from pursuing the issue of racial discrimination in the jury selection process, though a party's silence at the jury's empanelling normally estops the party from later objection, since the trial judge stated on record, albeit near mid-trial, that he had recognized a prima facie case of discrimination during voir dire and that he should have made an inquiry earlier; and he then acted properly within his discretion and made such an inquiry.

3. **Forgery § 2.2— uttering forged checks—intent—sufficiency of evidence**

   In a prosecution for uttering forged checks, the trial court properly overruled defendant's motion to dismiss on the ground of insufficiency of evidence of intent where defendant gave conflicting stories to police and the jury regarding the checks' origins, and defendant, when negotiating each check, lied to the recipient about the check's origin.

4. **Criminal Law § 141— habitual felon—separate indictment**

   There was no merit to defendant's contention that the trial court was without jurisdiction to try her as an habitual felon because indictments for the underlying felonies did not charge her with being an habitual felon, since the principal felony indictment need not refer to defendant's alleged status as an habitual offender and defendant received adequate notice by separate indictment of the State's intent to prosecute her as an habitual felon.

APPEAL by defendant from *Herring (D. B., Jr.), Judge*. Judgment entered 22 April 1988 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 9 May 1989.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General George W. Boylan, for the State.*

*Appellate Defender Malcolm Ray Hunter, by Assistant Appellate Defender Teresa A. McHugh, for defendant-appellant.*

GREENE, Judge.

Defendant Rena G. Sanders was found guilty of two counts of uttering a forged check under N.C.G.S. Sec. 14-120 (1986), and sentenced as an habitual felon under N.C.G.S. Sec. 14-7.1 *et seq.* (1986). Upon a consolidated judgment, the trial court sentenced defendant to fifteen years imprisonment. Defendant appeals.

The State's evidence showed the defendant negotiated one check and attempted to negotiate another, each belonging to Willie F. Tillman. Each check was drawn to the order of the defendant, but neither check had been signed by Mr. Tillman or his representative.

On the evening of 17 March 1987, Mr. Tillman noticed that two checks were missing from a desk drawer in the rear office of his business, the Bragg Motel on Bragg Boulevard in Fayetteville. The next morning, 18 March 1987, Mr. Tillman notified Peoples Bank and Trust Company of the loss.

On 18 March 1987, the defendant negotiated one of these checks to Sam Pefly, owner of Sam's Supermarket, in exchange for groceries and cash. The defendant told him that she worked at the Bragg Motel, and the check was for her wages. The defendant has never worked for Bragg Motel.

On 19 March 1987, the defendant attempted to negotiate the second check at the Peoples Bank and Trust Company in Fayetteville, telling the cashier that it was "her payroll check." A bank representative called the police who promptly arrested the defendant. The defendant told the police that she had received the check in payment of a debt from someone named Tim who had in turn received it from a third person.

On 7 May 1987, the defendant told a police investigator that, prior to the above incidents, she was visited by her friend Carol Woods, also known as India, and a man named Timmy who arrived with two checks. While the defendant was in the bathroom, India and Timmy made the checks out to her, so that the defendant could cash them and split the proceeds with her two guests.

That day they went to Sam's Grocery Store where the defendant bought some groceries and gave the change to India. On another day India drove the defendant to a downtown bank where the defendant was arrested attempting to negotiate the second check.

STATE v. SANDERS

[95 N.C. App. 494 (1989)]

According to the defendant, India told her the checks were from Tim who supposedly worked at a motel. The defendant had signed the checks because India owed her money, but the defendant never received any money, just groceries.

At trial, the defendant testified that Tim Johnson, who owed her money, offered to repay her with the proceeds from cigarettes and other merchandise he hoped to sell at Bragg Motel. The defendant waited outside the motel while Mr. Johnson conducted business inside. Eventually he returned with a check payable to the defendant. The defendant negotiated this check at Sam's Supermarket. The next day Mr. Johnson brought the defendant a second check which she attempted to cash at Peoples Bank and Trust Company. The defendant testified that she "figured" someone at Bragg Motel had given Tim Johnson both checks since Johnson seemed to be transacting some business there.

During jury *voir dire*, the State challenged one black venire member for cause and peremptorily challenged three other black venire members. One black served on the jury panel. The defendant is black. During trial the judge asked the prosecutor what motivated the State's peremptory challenges. After discussing the proffered reasons, the trial judge held that although a *prima facie* case of racial discrimination had been established, the State sufficiently rebutted it.

At the time she negotiated the checks, the defendant had three previous felony convictions: possession of heroin, forging a United States Treasury check, and sale and delivery of marijuana.

She was indicted on 31 March 1987 for the two counts of uttering forged checks, the conviction of which she now appeals. On the same date the defendant, by separate Special Indictment, was notified that the State would seek to sentence her as an habitual felon.

---

The issues presented are: I) whether the State's exercise of peremptory challenges violated the defendant's constitutional rights; II) whether the trial court erred in denying defendant's motion to dismiss for lack of substantial evidence of intent to utter a forged instrument; and III) whether the trial court possessed jurisdiction to try the defendant as an habitual felon.

I

[1]  The trial court determined the defendant's right to equal protection of the law as guaranteed by the Fourteenth Amendment of the United States Constitution was not violated by the State's alleged discriminatory exclusion of members of her race from her petit jury. The defendant claims error.

Batson v. Kentucky, 476 U.S. 79, 90 L.Ed.2d 69 (1986), guides our inquiry. Under Batson, the defendant has the burden of proving the existence of purposeful discrimination. 476 U.S. at 93. The defendant may establish a prima facie case of discrimination by showing that she is a member of a cognizable racial group whose members the State peremptorily excised from the venire under circumstances which raise an inference of racist motivation. 476 U.S. at 96. Upon such showing, the burden shifts to the prosecution who "must articulate legitimate reasons which are clear and reasonably specific and related to the particular case to be tried which give a neutral explanation for challenging jurors of the cognizable group." State v. Jackson, 322 N.C. 251, 254, 368 S.E.2d 838, 840 (1988), cert. denied, --- U.S. ---, 104 L.Ed.2d 1027, 109 S.Ct. 3165 (1989) (citing Batson, 476 U.S. 79, 90 L.Ed.2d 69). "The prosecution's explanation need not rise to the level of justifying a challenge for cause." Id. "The trial court will then have the duty to determine if the defendant has established purposeful discrimination." Batson, 476 U.S. at 98.

[2]  At this point we note the State argues the defendant either waived the Batson issue by failing to timely object to the State's actions, or the defendant, by failing to provide a transcript of the voir dire, has not provided a sufficient record for this court to review the issue. Normally, a party's silence at the jury's empanelling estops that party from later objection. See State v. Clay, 85 N.C. App. 477, 480, 355 S.E.2d 510, 512, disc. rev. denied, 320 N.C. 634, 360 S.E.2d 96 (1987). Here the trial judge stated on record, albeit near mid-trial, that he had recognized a prima facie case of discrimination during voir dire, and that he should have made a Batson inquiry earlier. Acting properly within his discretion, the trial judge then made such an inquiry. Cf. State v. Kirkman, 293 N.C. 447, 453-54, 238 S.E.2d 456, 460 (1977) (after jury has been empanelled, further challenge of juror is allowable within judge's discretion). In this situation the State cannot now claim the defendant is estopped from pursuing the issue.

The record before us, however, only marginally suffices for review. As a rule of practice, when challenging the jury's composition, the burden is on the defendant to provide a transcript of the jury *voir dire* as well as any other relevant portions of the record. *See Jackson v. Housing Authority of High Point*, 321 N.C. 584, 364 S.E.2d 416 (1988) (failure to provide relevant portions of transcript may prevent review of alleged impropriety in jury selection). The lack of a *voir dire* transcript detracts from our ability to review the substance of the proffered reasons, just as it inhibits review of the State's credibility. Ordinarily we would examine the questions or lack of questions to the venire members as well as their responses to determine whether the State's proffered reasons had any basis in fact. Here our review is possible because the record does contain the barest essentials: the racial composition of the jury, the number of black jurors excused, and the State's proffered reasons for their exclusion. The record also contains defense counsel's response to the prosecutor's explanations and the trial judge's conclusions.

Given the defendant is black and four of five black venire members were struck, we are unable, from the record before us, to say the trial court erred in determining that a *prima facie* case of discrimination existed. The record is unclear as to when or if the defendant raised the *Batson* issue, or whether the trial court made the observation and determination *sua sponte*. However, this questionably relevant distinction becomes irrelevant if the State rebutted any inference of discrimination.

The trial court, in determining whether the reasons proffered by the prosecution rebut the *prima facie* case of discrimination should:

> satisfy itself that the explanation is genuine. This demands of the trial judge a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges . . . .

*People v. Hall*, 35 Cal.3d 161, 197 Cal. Rptr. 71, 672 P.2d 854, 858 (1983).

In reviewing both the substantive validity of the State's proffered reasons and the prosecutor's credibility in so offering them,

the trial judge should take great care to assure that these reasons are bona fide and not simply "sham excuses belatedly contrived to avoid admitting acts of group discrimination . . . ." *Jackson*, 322 N.C. at 260, 368 S.E.2d at 843 (Justice Frye, concurring) (quoting *People v. Hall*, 35 Cal.3d 161, 167, 197 Cal. Rptr. 71, 75, 672 P.2d 854, 858 (1983) ). As noted above, these reasons must be reasonably specific and relate to legitimate criteria. The North Carolina Supreme Court has approved the following general criteria for the State's choice of a jury: "stable, conservative, mature, government oriented, sympathetic to the plight of the victim, and sympathetic to law enforcement crime solving problems and pressures." *Jackson*, 322 N.C. at 257, 368 S.E.2d at 841.

Our review of the trial court's determination is guided by *State v. Jackson*, 322 N.C. 251, 368 S.E.2d 838 (1988). The Court there held "since the trial court's findings will depend on credibility, a reviewing court should give those findings great deference." *Jackson*, 322 N.C. at 255, 368 S.E.2d at 840 (citing *Batson*, 476 U.S. 98, n.21, 90 L.Ed.2d 89, n.21). *See also Jackson*, 322 N.C. at 260, 368 S.E.2d at 843 (Justice Frye concurring) (the appellate court should "review with a scrupulous eye such proffered reasons . . . .").

In determining whether unconstitutional discrimination occurred in the composition of the jury, the trial judge should make specific findings of fact, which are conclusive on appeal provided they are supported in evidence. *See State v. Perry*, 250 N.C. 119, 124, 108 S.E.2d 447, 451, *cert. denied*, 361 U.S. 833, 4 L.Ed.2d 74 (1959) (specific findings made where composition of jury was challenged); *see also State v. Greene*, 324 N.C. 238, 376 S.E.2d 727 (1989) (case remanded for findings of fact and conclusions of law from a *Batson* hearing). Here, the trial judge's findings were conclusory. He stated:

> Upon the showing made, the court finds that the jurors excused were not excused because of their race. Like you say, Mr. Weeks (defense attorney), I agree. It is a close case. It is a close call, but nevertheless, on the matters presented here, I do not find that race was a basis for the jurors being excused, although it certainly began to appear that way.

This inadequacy of the court's finding would normally require remand for further findings. *State v. Booker*, 306 N.C. 302, 312-13, 293 S.E.2d 78, 84 (1982). However, the failure of a trial court to

find facts is not prejudicial where there is no *"material* conflict in the evidence on *voir dire." State v. Riddick*, 291 N.C. 399, 408, 230 S.E.2d 506, 512 (1976) (emphasis in original) (*voir dire* conducted on admissibility of an in-custody confession).

Here, we are forced to assume that no material difference in fact existed since the defendant failed her duty to assure the availability of a jury *voir dire* transcript for our review. Thus, the trial judge's failure to make adequate factual findings does not constitute reversible error. Further, the defendant's failure to secure a *voir dire* transcript makes remand for further findings by the trial judge pointless. Without such transcript, we still would be unable to determine whether the trial judge's findings had a basis in fact.

Our review of the trial judge's conclusory finding is thus relatively superficial since we have only the information adduced at the *Batson* inquiry. From that inquiry we note that of the five black venire members, one served on the jury, one was excused for cause, and the three remaining were removed through the State's peremptory challenges. The State listed the following reasons, among others, for excusing the latter three venire members. Mr. Stiehl, Assistant District Attorney for the State, explained that he excused the first black because that venire member had held three jobs in the preceding ten months. Mr. Stiehl stated that he peremptorily challenged the next black member because she claimed to have never participated in court proceedings. According to Mr. Stiehl this member in fact had an extensive criminal record. Mr. Stiehl explains that he deemed the last member undesirable as a juror because of her headstrong and overbearing personality. The trial court determined that these proffered reasons rebutted the *prima facie* case of discrimination. We agree that each of the reasons, on its face, rebuts the *prima facie* case.

On its face, the fact that one venire member apparently jumped from job to job reasonably relates to the legitimate government criteria of maturity and stability set forth in *Jackson. See Jackson*, 322 N.C. at 255-57, 368 S.E.2d at 840-41 (employment history a valid consideration in the State's challenge of a venire member).

The State contends another venire member's mendacity or criminality reasonably relates to the government's juror criteria approved in *Jackson*. The defendant raises the issue of whether the State's assertion of this member's criminal record was well

based in fact. Certainly this question would be worthy of our review. However, given the lack of a jury *voir dire* transcript, we simply find the proffered reason acceptable on its face.

Similarly, we also find acceptable, on its face, the State's proffer that the third venire member was peremptorily challenged because of her overbearing and headstrong personality. Although we do not relate this reason to the government juror criteria listed in *Jackson*, we find this reason is superficially acceptable as a matter of trial strategy.

While on this record we accept the State's proffered reasons as rebutting the *prima facie* case of discrimination, we do not hold that any of the asserted reasons are sufficient *per se*. In every case, the trial judge, when presented with similar reasons, must consider the reasons within the context of information elicited during the *voir dire* of the jury, of which we had no benefit in this case, and any evidence offered by the defendant, of which we also have none in this case. A reason which meets the *Batson/Jackson* test in one case may totally fail to rebut the inference in another case.

Here, reviewing the facial validity of the proffered reasons, we affirm the trial court's determination that these reasons rebutted the *prima facie* case of discrimination. In affirming the trial court, we take into account the facts that one black juror did serve on the panel and that the record contains no discriminatory comments by the State's attorney. *See Jackson*, 322 N.C. at 255, 368 S.E.2d at 840. Further, we find defendant did not otherwise prove a case of racial discrimination in the composition of her jury.

The proffered reasons found acceptable here may be compared to some found illegitimate in other jurisdictions. In *People v. Turner*, 42 Cal.3d 711, 230 Cal. Rptr. 656, 726 P.2d 102 (1986), the Supreme Court of California found unacceptable the State's assertion that "something in her work" would "not be good for the People's case." 726 P.2d at 110. The Court found that "the prosecutor's only knowledge of Ms. Buchanan's work was her statement to the court that she was employed as a 'supervising hospital unit coordinator' at the Los Angeles County-USC Medical Center . . . ." *Id.* The defendant in *Turner* had been convicted of a murder which in no way related to the Medical Center.

Also in *Turner*, another venireman was peremptorily challenged because he was a truck driver who had difficulty in understanding *voir dire* questions. The California Court noted that truck drivers as a class cannot be considered incompetent as jurors and that other jurors, not challenged, also had difficulty responding to the State's stilted questions. *Turner*, 726 P.2d at 108-09.

*Gamble v. State*, 257 Ga. 325, 357 S.E.2d 792, 795 (1987), provides another example of illegitimate peremptory challenges where the State in one case excused a venireman because he knew the prosecutor, was uncooperative in response to questions, had spent six years in the Army, and was similar to the defendant in age and in appearance. The Georgia Supreme Court dismissed all these reasons as insubstantial. In fact, the venireman only knew of the prosecutor's identity as the local "D.A." The venireman had not been forthcoming with additional information only because the State had not asked him more questions, and the State's belief that a six-year Army term was somehow an unworthy deviation from the supposed normal four-year term was purely speculative. Lastly, the Court stated that the similar age excuse could not rebut the *prima facie* case since other unchallenged jurors were apparently also about the same age. *Id.*

A comparison of the illegitimate reasons seen above to the reasons proffered in the case at hand reinforces our deference to the trial court's determination that the reasons proffered here adequately rebut the *prima facie* case of discrimination.

II

[3] The defendant also argued her conviction for uttering a check with a forged endorsement must be reversed because the evidence was insufficient, as a matter of law, to allow a reasonable jury to find that the defendant had the requisite knowledge that the endorsement was forged. We disagree.

The trial court overruled defendant's motion to dismiss on the ground of insufficiency of evidence of intent. Dismissal may be avoided only if substantial direct or *circumstantial* evidence exists as to each element of the offense. *State v. Thomas*, 296 N.C. 236, 244, 250 S.E.2d 204, 208-09 (1978). "The substantial evidence test requires that the evidence must be existing and real, not just seeming and imaginary." *State v. Bates*, 309 N.C. 528, 533, 308 S.E.2d 258, 262 (1983) (quoting *State v. Irwin*, 304 N.C. 93,

97-98, 282 S.E.2d 439, 443 (1981) ). "[T]he trial judge must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom." *Id.* Further, "the court must consider the defendant's evidence which explains or clarifies that offered by the State. The court must also consider the defendant's evidence which rebuts the inference of guilt when it is not inconsistent with the State's evidence." *Bates*, 309 N.C. at 535, 308 S.E.2d at 262-63 (citations omitted).

"Uttering a forged instrument consists in offering to another the forged instrument with the knowledge of the falsity of the writing and with intent to defraud." *State v. Greenlee*, 272 N.C. 651, 657, 159 S.E.2d 22, 26 (1968). A defendant's intent to defraud in a forgery case may be proved by circumstantial evidence. 36 Am. Jur. 2d *Forgery* Sec. 46 (1968); Annot. "Possession or Uttering of Forged Paper," 164 A.L.R. 621, 668 (1946).

In the case at hand, the State presented substantial circumstantial evidence that the defendant knew she possessed and uttered forged instruments. Central to the State's case are the conflicting stories which the defendant presented regarding the checks' origins. The explanations given to the police differed substantially from her testimony at trial. If a jury were to view these changes as evidence of prefabrication, it could infer that the defendant knew the checks were forged. Additionally, the State showed the defendant, when negotiating each check, lied to the recipient about the check's origin. From this the jury could infer that the defendant doubted the legitimacy of these transactions.

The defendant does not now dispute either that she uttered the checks or that the checks were forged. She claims only that she had no knowledge of the forgery. We find the jury had before it substantial circumstantial evidence of defendant's knowledge of the forgery.

### III

[4]   The defendant finally argues the trial court was without jurisdiction to try the defendant as an habitual felon because the indictments for the underlying felonies did not charge the defendant with being an habitual felon. It is well established precedent that the principal felony indictment need not refer to the defendant's alleged status as an habitual offender. Since the defendant received adequate notice by separate indictment of the State's intent to

prosecute her as an habitual felon, the defendant is not prejudiced. *State v. Todd*, 313 N.C. 110, 120, 326 S.E.2d 249, 255 (1985); *State v. Allen*, 292 N.C. 431, 433, 233 S.E.2d 585, 587 (1977); *State v. Keyes*, 56 N.C. App. 75, 78, 286 S.E.2d 861, 863 (1982).

No error.

Judge COZORT concurs.

Judge JOHNSON concurs in the result.