STATE OF NORTH CAROLINA v. DEANO DONDAY FLOYD

No. 9312SC764

(Filed 5 July 1994)

1. **Jury § 260 (NCI4th)— discrimination in jury selection— prima facie case rebutted—reasons for exclusion of blacks not pretextual**

Though defendant made out a *prima facie* case of racial discrimination in the jury selection process, the trial court did not err in finding and concluding that the prosecutor rebutted defendant's *prima facie* case and that the prosecutor's reasons for excusing the black jurors were not pretextual, where one prospective black juror seemed to have trouble understanding the burden of proof and her duty should the State prove defendant's guilt beyond a reasonable doubt, and she had a son defendant's age who was involved in a breaking and entering; the second juror was evasive and did not reveal his involvement in various crimes; the third juror seemed very headstrong and not amenable to deliberation; the fourth juror had been arrested on drug charges and concealed convictions for writing worthless checks; and the fifth juror was charged with driving while impaired and had a discipline problem in the military.

**Am Jur 2d, Jury § 235.**

**Proof as to exclusion of or discrimination against eligible class or race in respect to jury in criminal case. 1 ALR2d 1291.**

**Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

2. **Criminal Law § 313 (NCI4th)— joinder of robbery cases— no error**

The trial court did not err in joining armed robbery cases for trial and in denying defendant's motion to sever where the two robberies were separated by less than twenty-four hours; both robberies took place at Quik Stop convenience stores in the Fayetteville area; in both robberies the perpetrator used a silver automatic handgun; in both the robber walked up to the counter and distracted the store clerk with a transaction before revealing his weapon and demanding money; the evidence was not compli-

cated; and the court adequately separated the offenses in the jury charge. N.C.G.S. § 15A-926(a).

**Am Jur 2d, Actions § 159.5.**

**Consolidated trial upon several indictments or informations against same accused, over his objection. 59 ALR2d 841.**

3. **Evidence and Witnesses § 403 (NCI4th)— altercation with eyewitness—identity of eyewitness speculative—evidence inadmissible**

Although evidence of a prior altercation with an eyewitness is relevant as a general rule, that evidence loses its relevance when, as here, the identity of the person with whom defendant argued is merely speculation.

**Am Jur 2d, Evidence §§ 307 et seq., 560 et seq.**

4. **Evidence and Witnesses § 1708 (NCI4th)— photographic evidence improperly excluded—defendant not prejudiced**

Though photographic evidence was improperly excluded, defendant was not prejudiced, since the scene depicted in the photographs was described for the jury, and it was not a difficult scene for the jury to imagine.

**Am Jur 2d, Evidence §§ 960 et seq.**

Judge GREENE dissenting.

Appeal by defendant from judgments entered 16 February 1993 by Judge Joe Freeman Britt in Cumberland County Superior Court. Heard in the Court of Appeals 12 April 1994.

On 5 August 1991 the Quick Stop 95 and the Quick Stop 31 in Fayetteville were robbed. A customer was robbed and shot during the Quick Stop 31 robbery. One clerk was on duty in each store during the robberies. They each closely observed the robber, and each gave police a description. After the robberies, the Quick Stop 31 clerk transferred to Quick Stop 95. On 9 August 1991 both clerks were on duty at the Quick Stop 95 when defendant entered the store to purchase a gallon of gasoline. At this time both clerks separately identified defendant as the robber and the police were called.

Defendant was tried on three charges of robbery with a dangerous weapon and one charge of assault with a deadly weapon with

STATE v. FLOYD

[115 N.C. App. 412 (1994)]

intent to kill inflicting serious injury. The jury found defendant guilty of all charges, and the court sentenced him to consecutive twenty, twenty, and twenty-five year terms and a concurrent twenty-five year term. From this judgment defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General William F. Briley, Associate Attorney General Elizabeth Leonard McKay, and Associate Attorney General Lisa C. Bland, for the State.*

*Appellate Defender Malcolm R. Hunter, Jr., by Assistant Appellate Defender Gordon Widenhouse, for defendant appellant.*

ARNOLD, Chief Judge.

[1]   Defendant first argues that the prosecutor impermissibly used peremptory challenges to excuse prospective jurors based upon their race. The record reveals that the prosecutor challenged five of five prospective black jurors, and that defendant timely objected to each challenge.

When asserting a claim of racial discrimination in jury selection defendant must first make out a prima facie case of racial discrimination. Defendant makes a prima facie case by showing that (1) he is a member of a racial minority, (2) that members of his race were peremptorily excused, and (3) that racial discrimination appeared to be the motivation for excusing the members of his race. *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), *State v. Porter*, 326 N.C. 489, 497, 391 S.E.2d 144, 150 (1990). The court found that defendant made a prima facie case, and the State does not argue to the contrary. Because defendant made his prima facie case, the State was required to articulate race neutral reasons which were " 'clear and reasonably specific' . . . [and] 'related to the particular case to be tried.' " *Porter*, 326 N.C. at 497, 391 S.E.2d at 150 (citing *Batson*). After the State's rebuttal defendant had the right of surrebuttal, which he exercised, to show that the State's reasons were pretextual. *Id*. The court found and concluded that the prosecutor rebutted defendant's prima facie case and that the prosecutor's reasons for excusing the black jurors were not pretextual.

On review, the trial judge's findings are entitled to great deference, rightly so because he is present when the jurors are examined. He is able to judge the prosecutor's credibility and to gain a first hand impression of the prosecutor's demeanor. Based upon these factors

STATE v. FLOYD

[115 N.C. App. 412 (1994)]

as well as his experience and the prosecutor's statements and questions, the trial judge determines if the prosecutor excused prospective jurors based on their race. *See State v. Smith*, 328 N.C. 99, 400 S.E.2d 712 (1991).

Our examination of the transcript revealed valid race neutral reasons, articulated by the prosecutor, for excusing the prospective black jurors, and, giving the trial judge's findings due deference, we are compelled to affirm the judge's ruling.

The prosecutor excused the first prospective black juror because she seemed to have trouble understanding the burden of proof and her duty should the State prove defendant's guilt beyond a reasonable doubt. This prospective juror also had a son approximately defendant's age who was involved in a breaking and entering. The prosecutor excused the next prospective black juror because he was evasive in that he was reluctant to reveal his involvement in an assault on his wife and sister-in-law. This prospective juror concealed two other charges against him of assault and communicating threats. He also had a relative involved in an armed robbery.

The next prospective black juror seemed very head-strong, according to the prosecutor, and not amenable to deliberation. The prosecutor drew this conclusion from the prospective juror's statements about her involvement in her adult daughter's affairs, which ultimately resulted in her daughter being unemployed. The prosecutor further supported his perception of the prospective juror with her responses to job-related questions. The prosecutor also had difficulty making eye contact with this prospective juror.

The fourth prospective black juror was excused because she had been arrested on drug charges, and she concealed convictions for writing worthless checks. The final prospective black juror was excused because he was charged with driving while impaired, and the prosecutor concluded from the juror's statements that he had a discipline problem in the military.

Defendant's efforts to show that these reasons were pretextual are not sufficient to persuade us to reverse the trial judge's ruling. Part of defendant's strategy consists of comparing traits of excused jurors with traits of jurors accepted by the prosecutor. It has long been recognized that this strategy is of little use because it "fails to address the factors as a totality which when considered together provide an image of a juror considered in the case undesirable by the

State." *Porter*, 326 N.C. at 501, 391 S.E.2d at 152-53. " '[M]erely because some of the observations regarding each stricken venireperson may have been equally valid as to other members of the venire who were not challenged [does not] require[] . . . finding the reasons were pretextual.' " *Id.* at 501, 391 S.E.2d at 153. The cold record before us does not provide enough support for defendant's remaining arguments to convince us to disregard the trial judge's conclusion that the prosecutor was not motivated by racial discrimination.

**[2]** Defendant argues next that the trial court erred in joining the cases for trial and in denying his motion to sever. Two or more offenses may be joined for trial when the offenses "are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." N.C. Gen. Stat. § 15A-926(a) (1988). The decision to join offenses for trial is in the trial judge's discretion and will not be disturbed absent an abuse of that discretion. *State v. Silva*, 304 N.C. 122, 282 S.E.2d 449 (1981). In deciding whether or not to join offenses it is appropriate to consider commonality of facts, *see State v. Bracey*, 303 N.C. 112, 277 S.E.2d 390 (1981), and the nature of the joined offenses. *State v. Greene*, 294 N.C. 418, 241 S.E.2d 662 (1978).

The two robberies were separated by less than twenty-four hours. Both robberies took place at Quick Stop convenience stores in the Fayetteville area, and in both robberies the perpetrator used a silver automatic handgun, although the clerk at Quick Stop 95 testified that it was a 9mm, and a spent shell casing established that a .25 caliber was used at the Quick Stop 31. In both robberies the robber walked up to the counter and distracted the store clerk with a transaction before revealing his weapon and demanding money. Based upon these facts and our review of pertinent case law we conclude that these offenses were properly joined for trial. *See Bracey*, 303 N.C. 112, 277 S.E.2d 390; *State v. Powell*, 297 N.C. 419, 255 S.E.2d 154 (1979).

We also conclude that joinder of these offenses was not prejudicial to defendant.

The court is required to grant a severance motion if it is necessary for "a fair determination of the defendant's guilt or innocence of each offense." G.S. 15A-927(b). The court must determine whether "in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able

**STATE v. FLOYD**

[115 N.C. App. 412 (1994)]

to distinguish the evidence and apply the law intelligently as to each offense." G.S. 15A-927(b)(2).

*Bracey*, 303 N.C. at 116, 277 S.E.2d at 394. The test on review is are the offenses "so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial to the defendant." *State v. Cummings*, 103 N.C. App. 138, 141, 404 S.E.2d 496, 498 (1991). As indicated, the circumstances were similar and the offenses occurred less than twenty-four hours apart. Furthermore, the evidence was not complicated, and the court adequately separated the offenses in the jury charge. The verdict sheet distinguished each charge by naming the store clerk and the store number involved in each offense. The verdict sheets for the assault and robbery of the customer contained the customer's name. Defendant was, therefore, not prejudiced by the denial of his motion to sever. *See Bracey*, 303 N.C. 112, 277 S.E.2d 390.

[3] Defendant next argues that the trial judge erred in excluding evidence which supported his theory of the case. First, defendant argues that his sister should have been permitted to testify about an incident that occurred prior to the robberies between defendant and the Quick Stop 95 store clerk who identified him. Defendant contends this evidence provided a basis from which the clerk could have identified defendant without his involvement in the robbery, thus strengthening his alibi defense.

On voir dire defendant's sister testified that in July 1991, nearly a month before the robberies, defendant attempted to purchase beer at the Quick Stop 95. The clerk refused to sell defendant beer because he did not have identification. Defendant returned with identification, but the clerk again refused to sell beer to defendant because the identification was expired. Defendant went to his sister's home and told her about this incident. Defendant's sister testified that she knew which clerk defendant was talking about because of defendant's description of the clerk and the name he called the clerk. She testified that "[t]here's only one lady in the store that could—that could be describe as the name that he caller her." Defendant described the clerk as that "dyke-ish bitch" or "bitch dyke."

Although we agree with defendant that evidence of an altercation with an eyewitness is relevant as a general rule, that evidence loses its relevance when the identity of the person with whom defendant argued is merely speculation. We conclude that the court properly

ruled that the identification of the store clerk was too speculative for the evidence to be relevant.

[4] Second, defendant argues the court erred in excluding photographs taken in January 1993, a year and a half after the robberies, showing the distance between the Quick Stop 95 and another convenience store across the street from the Quick Stop 95. The placement of the convenience stores was relevant because defendant was identified by the Quick Stop clerks when he entered the Quick Stop 95 four days after the robberies. The close proximity of another convenience store shows how unlikely it would be for defendant to return to the store he allegedly robbed four days earlier when another convenience store was just across the street.

The prosecutor objected because the photographs did not depict the scene as it appeared in August 1991. Apparently the street between the Quick Stop 95 and the other convenience store was widened between 1991 and 1993. The photographer was unable to say how much the road was widened or how much property, if any, was taken from the convenience store lots. The photographer did testify that the stores were in the same place in 1991. Because the photographs were offered to show the placement of the stores, the modification to the street between them had very little bearing on their relevance. We hold that the photographs were relevant and admissible. Exclusion of the photographs is not reversible error however.

Before defendant offered the photographs into evidence the photographer testified about the contents of the photographs. Therefore, anything the jury would have seen in the photographs was described to them. It is not difficult for jurors to visualize convenience stores on opposite sides of a street, and, therefore, defendant suffered no prejudice from the exclusion of the photographs.

Defendant also argues that the court erred by excluding his expert witness's testimony. Because the State's case was based entirely on eyewitness testimony, defendant put on an expert in the field of eyewitness identification who would have told the jury how unreliable eyewitness testimony is. He also would have explained the factors which affect its accuracy. Because the defendant is black and the State's witnesses are white the expert was specifically prepared to discuss the problems with cross-racial identification. The State objected to the expert's testimony, and, after voir dire, the court ruled the testimony inadmissible.

STATE v. FLOYD

[115 N.C. App. 412 (1994)]

Although our impression is that the testimony was admissible, we do not address this issue because defendant waived his right to argue it on appeal. The judge found as an alternative reason for excluding the evidence that the defendant waived his right to present the evidence because the expert, who was from South Carolina, left for the airport before the court ruled on the admissibility of his testimony. Defendant did not assign error to this finding and accordingly waived the right to argue the admissibility of the evidence. N.C.R. App. P. 10.

We reviewed defendant's remaining arguments and find no prejudicial error.

No error.

Judge MARTIN concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree, for the reasons given below, with the majority's conclusion that "the transcript revealed valid race neutral reasons, articulated by the prosecutor, for excusing the prospective black jurors, and, giving the trial judge's findings due deference, we are compelled to affirm the judge's ruling."

A defendant has "the ultimate burden of persuading the court that intentional racial discrimination has guided the use of peremptory challenges," and our courts have noted several factors for the trial judge to consider in determining whether a defendant has met this ultimate burden. *State v. Porter*, 326 N.C. 489, 497-98, 391 S.E.2d 144, 150 (1990). The trial judge should consider " 'the susceptibility of the particular case to racial discrimination,' " taking into account "[t]he race of the defendant, the victims, and the key witnesses," "the prosecutor's demeanor to determine whether the prosecutor is 'engaging in a careful process of deliberation based on many factors,' " and "the explanation itself." *Id.* at 498, 391 S.E.2d at 150-51. In evaluating the prosecutor's explanation, reference to objective and subjective criteria is involved, and "[t]he trial judge should consider whether 'similarly situated white veniremen escaped the State's challenges' and 'the relevance of the State's justification' to the case at trial." *Porter*, 326 N.C. at 498, 391 S.E.2d at 151. In addition, "[t]he trial judge should evaluate the explanation 'in light of the explanations offered

for the prosecutor's other peremptory strikes' and 'the strength of the prima facie case.' " *Id.* at 498-99, 391 S.E.2d at 151. "In reviewing both the substantive validity of the State's proffered reasons and the prosecutor's credibility in so offering them, the trial judge should take great care to assure that these reasons are bona fide and not simply 'sham excuses belatedly contrived to avoid admitting acts of group discrimination . . . .' " *State v. Sanders*, 95 N.C. App. 494, 499-500, 383 S.E.2d 409, 413, *disc. rev. denied*, 325 N.C. 712, 388 S.E.2d 470 (1989). The prosecutor's questions and statements during jury selection are also relevant, and "the prosecution's 'use of a disproportionate number of peremptory challenges to strike black jurors in a single case' " is "indicative of racial discrimination." *State v. Thomas*, 329 N.C. 423, 431, 407 S.E.2d 141, 147 (1991).

The circumstances of this case and the transcript of the *voir dire* reveal that the prosecutor used five of his six peremptory challenges to exclude every African-American called into the jury box and that "similarly situated white veniremen escaped the State's challenges" due to disparate treatment of similarly situated veniremembers of different races. Therefore, the prosecutor's reasons for using peremptory challenges against prospective black jurors were merely pretextual. For example, the prosecutor gave two reasons for challenging the first prospective black juror. First, the prosecutor stated the first prospective black juror had trouble understanding the burden of proof. Second, she had a son about defendant's age who had committed a breaking and entering.

Under the first reason, the following exchange took place between the prosecutor and the first prospective black juror:

MR. STIEHL: . . . you heard [J]udge Britt earlier talking about the state has the burden of proving guilt beyond a reasonable doubt. Do you recall those words?

JUROR #5: Yes.

MR. STIEHL: Okay. And do you understand that that does not require the state to prove guilt beyond all doubt or all shadow of a doubt?

JUROR #5: Yes.

MR. STIEHL: Okay. Do you understand what your duty as a juror would be should the state prove guilt beyond a reasonable doubt in this case?

JUROR #5: Yes.

MR. STIEHL: And what would that be?

JUROR #5: That, um—after you said it—um, for me to be fair about everything that I hear and say.

The prosecutor then ended her *voir dire* and did not explain what would happen in such a situation or ask the trial judge for additional instructions. For the non-African American prospective jurors, the prosecutor did not ask any open-ended questions about the reasonable doubt standard; rather, he either asked close-ended questions or none at all. A typical exchange when the prosecutor asked a prospective white juror about the reasonable doubt standard is as follows:

MR. STIEHL: . . . Do you understand that as [J]udge Britt was mentioning to all of the jurors earlier, that the defendant is before you and other jurors and he's presumed innocent? In other words, it's up to the state of North Carolina to prove guilt through this trial beyond a reasonable doubt? Do you remember those words?

JUROR #4: I understand that.

MR. STIEHL: Okay. And I think in fact you may have even seen a video earlier, probably yesterday if you reported yesterday, where they talked about criminal cases and civil cases and "your role as a juror" I believe is how it's presented?

JUROR #4: Yes, sir.

MR. STIEHL: Anything about any of the presumption of innocence, proof of guilt beyond a reasonable doubt, anything that you've heard thus far that you feel you and I need to talk about, or you feel comfortable with everything?

JUROR #4: No, I feel comfortable, sure.

The prosecutor also asked the prospective jurors if "either yourselves or a close friend or relative [had been] charged with armed robbery, some type of theft, or an assault such as assault with a deadly weapon with intent to kill inflicting serious injury or some type of lesser assault." The following exchange took place between the first prospective black juror and the prosecutor:

JUROR #5: Yes. It was a, uh—(pause)—uh, a robbery. Uh, and my son was involved in it somehow. I didn't even know—

MR. STIEHL: Was that here in Cumberland County?

**STATE v. FLOYD**

[115 N.C. App. 412 (1994)]

JUROR #5: Yes. No, I have that wrong. That was a breaking and entering.

MR. STIEHL: Okay.

JUROR #5: It wasn't no robbery.

MR. STIEHL: And was it allegedly a home or a business that was involved?

JUROR #5: I don't even know.

MR. STIEHL: Okay. Thank you, ma'am.

When the prosecutor questioned a prospective white juror about her husband's acquittal for felonious assault, however, he asked her detailed questions and made statements such as "did your husband have a belief that possibly he was going to be robbed," "[s]o it was a jury trial," and "[he was found] not guilty." In addition, he asked this prospective white juror, "Is there anything about that experience that—that would prevent you from being fair to either side in this case?" The prosecutor told the trial judge that his reason for challenging the first prospective black juror but not the prospective white juror is as follows:

> Additionally, [the first prospective black juror] said her son had been involved in a breaking or entering—she didn't come down here—that was involved in it. Apart from [the prospective white juror] who went into a length—lengthy explanation about how she in fact had been the victim in a case, and how she and her husband had—or her husband had been found not guilty, uh, whereby it was a two on one confrontation that took place out on the roadway versus, uh, [the first prospective black juror]'s son who, uh, either was caught red handed or tied to a break-in and there being no excuse offered or tendered by [the first prospective black juror] concerning her son's activities. Uh, that is what distinguished [the prospective white juror] from [the first prospective black juror].

The prosecutor, however, did not question the first prospective black juror about the incident with her son and did not ask her "[i]s there anything about that experience that—that would prevent you from being fair to either side in this case" as he did the prospective white juror.

I find it unnecessary to recite the transcript for each prospective black juror excused by the prosecutor because the disparate treatment of this juror alone, coupled with the fact that the prosecutor used five of his six peremptory challenges to exclude every African-American called into the jury box, shows that the prosecutor's reasons were not "bona fide" and were "sham excuses belatedly contrived to avoid admitting acts of group discrimination" and therefore violated defendant's right to a jury selected without regard to race. *See generally Gamble v. State,* 357 S.E.2d 792, 795 (Ga. 1987). For these reasons, I would grant defendant a new trial.