IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-998

Filed: 21 January 2020

Columbus County, No. 15 CRS 50590

STATE OF NORTH CAROLINA

v.

ANTIWUAN TYREZ CAMPBELL

Appeal by defendant from judgment entered 2 August 2017 by Judge Douglas B. Sasser in Columbus County Superior Court. Heard in the Court of Appeals 19 September 2019.

*Attorney General Joshua H. Stein, by Assistant Attorney General Peter A. Regulski, for the State.*

*Geeta N. Kapur for defendant-appellant.*

ARROWOOD, Judge.

Antiwuan Tyrez Campbell ("defendant") appeals from judgment entered against him for first-degree murder. On appeal, defendant argues that the trial court erred by concluding that he failed to establish a *prima facie* case of racial discrimination in jury selection, as set forth by *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). The State has filed a motion to dismiss defendant's appeal. We deny the same and review defendant's appeal on the merits. For the reasons that follow, we find no error.

## I.     Background

On 15 April 2015, defendant was indicted for the first-degree murder of Allen Wilbur Davis, Jr., as well as the second-degree kidnapping of K.J.[1]  The case came on for trial in Columbus County Superior Court before the Honorable Douglas B. Sasser on 24 July 2017.  On that date, the trial court addressed several pretrial motions filed by defense counsel, including "a motion for a complete recordation of all the proceedings."  Counsel specifically noted that she was "not requesting that [complete recordation] include jury selection," and that her motion was "[j]ust for appeal purposes."  The trial court granted the motion for recordation.  Jury selection commenced the following day.  However, as requested by defense counsel, those proceedings were not recorded.

On the second day of jury selection, as the parties were seating alternate jurors, defense counsel objected to the State's use of peremptory challenges, alleging that they were exercised in a racially discriminatory manner in violation of *Batson*.  By this point in the proceedings, the State had exercised four peremptory challenges, three of which were used to strike African American prospective jurors:  Ms. Vereen, Ms. Holden, and Mr. Staton.  Defense counsel asserted that "the State . . . has tried extremely hard for every African-American, to excuse them for cause[,]" adding that "the last two alternate [African American] jurors . . . excused showed no leaning one

---

[1] A pseudonym is used to protect the juvenile's privacy.

way or the other or indicated that they would not be able to hear the evidence, apply the law, and render a verdict." Defense counsel further noted that

> [w]e had Ms. Vereen on the front, who the State stayed on her over and over again, trying to get her removed for cause, and they finally used a peremptory on her. And then we move to our alternate, Mr. Staton. [The prosecutor] tried twice to get him removed for cause.

After considering defense counsel's argument, the trial court denied defendant's *Batson* challenge.

Later that day, however, Judge Sasser stated that "upon further reflection, although I do not find that a *prima facie* case has been established for discrimination pursuant to *Batson*, in my discretion, I am still going to order the State to proceed as to stating a racially-neutral basis for the exercise of the peremptory challenges[.]" The State then offered the following bases for the exercise of its peremptory challenges for each of the stricken African American prospective jurors:

1.    The first juror, Ms. Vereen, had indicated that she knew Clifton Davis ("Davis") and had dated his brother, both of whom were potential witnesses at defendant's trial. Davis was a friend of defendant, and was allegedly at the scene with him at the time of the crimes.

2.    The second juror, Mr. Staton, was challenged because he "made several conflicting statements during the State's questioning to try to ensure if he could be

fair and impartial or not." Further, he knew K.J.'s mother, who was "a fact witness and . . . an eyewitness . . . to the kidnapping."

3.     The third juror, Ms. Holden, was stricken because she had been a classmate of two potential witnesses at defendant's trial. The State also explained that

> an additional reason for the peremptory strike against Ms. Holden was the fact when she was describing her political science background and nature as a student, she also was indicating that she was a participant, if not an organizer, for Black Lives Matter at her current college with her professor, and whether or not that would have any implied unstated issues that may arise due to either law enforcement, the State, or other concerns we may have.

Following the State's explanation of the bases for the exercise of its peremptory challenges, the trial court reiterated that it "continues to find . . . that there has not been a *prima facie* showing as to purposeful discrimination" in violation of *Batson*.

At the conclusion of the trial, the jury returned verdicts finding defendant not guilty of second-degree kidnapping, but guilty of first-degree murder. Defendant timely appealed.

## II.     Discussion

On appeal, defendant argues that the trial court erred in ruling that he failed to establish a *prima facie* showing that the State exercised peremptory challenges in a racially discriminatory manner, in violation of *Batson*. The State has filed a motion

to dismiss defendant's appeal.  After first disposing of the State's motion, we turn to the merits of defendant's appeal.

### A.    Motion to Dismiss

The State argues that defendant's failure to include in the appellate record a transcript of the jury selection proceedings warrants dismissal of defendant's appeal. We disagree and deny the State's motion to dismiss on this ground.

The record in this case is minimally sufficient to permit appellate review.  We disagree with the proposition that, in order to be entitled to review of a *Batson* claim, a defendant *must* include a verbatim transcript of jury selection in the record.  We find no support in our statutes or case law which lead to such a result.  We hasten to add that if a defendant anticipates making a *Batson* discrimination argument, it is extremely difficult to prevail on such grounds without a transcript of jury selection.

> A three-step process has been established for evaluating claims of racial discrimination in the prosecution's use of peremptory challenges.  First, defendant must establish a *prima facie* case that the peremptory challenge was exercised on the basis of race.  Second, if such a showing is made, the burden shifts to the prosecutor to offer a racially neutral explanation to rebut defendant's *prima facie* case. Third, the trial court must determine whether the defendant has proven purposeful discrimination.

*State v. Cummings*, 346 N.C. 291, 307-308, 488 S.E.2d 550, 560 (1997) (citations omitted), *cert. denied*, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998).

In determining whether a defendant has established a *prima facie* case of discrimination, our Supreme Court has noted that "[s]everal factors are relevant[.]" *State v. Hoffman*, 348 N.C. 548, 550, 500 S.E.2d 718, 720 (1998).

> Those factors include the defendant's race, the victim's race, the race of the key witnesses, questions and statements of the prosecutor which tend to support or refute an inference of discrimination, repeated use of peremptory challenges against [African Americans] such that it tends to establish a pattern of strikes against [African Americans] in the venire, the prosecution's use of a disproportionate number of peremptory challenges to strike [African American] jurors in a single case, and the State's acceptance rate of potential [African American] jurors.

*Id.* (quoting *State v. Quick*, 341 N.C. 141, 145, 462 S.E.2d 186, 189 (1995)).

A verbatim transcript need not be furnished in every case for us to review whether a defendant established a *prima facie Batson* claim before the trial court. *See State v. Sanders*, 95 N.C. App. 494, 499, 383 S.E.2d 409, 412 (1989) (acknowledging even without a verbatim transcript of jury selection, the record contained "the barest essentials" to permit review: "the racial composition of the jury, the number of [African American] jurors excused, and the State's proffered reasons for their exclusion. The record also contains defense counsel's response to the prosecutor's explanations and the trial judge's conclusions."). Yet a defendant must include *some evidence* in the record, in one form or another, shedding light on the aforementioned factors to enable appellate review of a *Batson* claim. A narrative

summary of *voir dire* proceedings, made during the *Batson* hearing and agreed to by defense counsel, the prosecutor, and the trial court, as was done here, may suffice to permit review. Moreover, the narrative summary in this case was minimally sufficient to enable review.

While we believe that such a narrative must contain more relevant information in order to prevail, as discussed *infra* in our determination on the merits, unlike the dissent, we find remand to be unnecessary. The dissent opines that the trial court erred in failing to make specific findings of fact as to the *Quick* factors in its determination that defendant had not made a *prima facie* showing, and believes remand for entry of such findings to be appropriate. We disagree. The trial court's findings on defendant's *Batson* claim were indeed conclusory: "[A]t this point, the Court does not find that the State's exercise of peremptory challenges has even reached [the very low hurdle for making a *prima facie* claim] yet. . . . [T]he Court has found at this point there's not a *prima facie* showing, and the Court will deny the *Batson* challenge."

Nonetheless, remand is inappropriate. While the absence of a transcript of *voir dire* does not preclude our review, it does preclude remand in the instant case. "[T]he failure of a trial court to find facts is not prejudicial where there is no '*material* conflict in the evidence on *voir dire*.'" *Sanders*, 95 N.C. App. at 500-501, 383 S.E.2d at 413 (emphasis in original) (quoting *State v. Riddick*, 291 N.C. 399, 408, 230 S.E.2d

506, 512 (1976)). In *Sanders,* where the trial court entered a similar conclusory finding,

> we [were] forced to assume that no material difference in fact existed since the defendant failed her duty to assure the availability of a jury *voir dire* transcript for our review. Thus, the trial judge's failure to make adequate factual findings d[id] not constitute reversible error. Further, the defendant's failure to secure a *voir dire* transcript ma[de] remand for further findings by the trial judge pointless. Without such transcript, we still would be unable to determine whether the trial judge's [new] findings had a basis in fact.

*Id.* at 501, 383 S.E.2d at 413. The Court then proceeded to review the trial court's conclusory finding based "only [on] the information adduced at the *Batson* inquiry." *Id.* Such is the appropriate course of action in this case.

### B. Reviewing the Merits of Defendant's *Batson* Claim

Reviewing defendant's *Batson* claim based upon the transcript of the trial court's hearing on the matter, we find no error.

"[T]he State's privilege to strike individual jurors through peremptory challenges[ ] is subject to the commands of the Equal Protection Clause." *Batson*, 476 U.S. at 89, 90 L. Ed. 2d at 82. "When the government's choice of jurors is tainted with racial bias, that overt wrong casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial." *Miller-El v. Dretke*, 545 U.S. 231, 238, 162 L. Ed. 2d 196, 212 (2005) (internal quotation marks, alterations, and citation omitted). When a defendant makes such an allegation, the

trial court is obligated to address defendant's claim with the three-step analysis set forth in *Cummings*, 346 N.C. at 307-308, 488 S.E.2d at 560, detailed *supra* part A.

"[W]hen a trial court rules that the defendant has failed to establish a *prima facie* case of discrimination, this Court's review is limited to a determination of whether the trial court erred in this respect." *State v. Bell,* 359 N.C. 1, 12, 603 S.E.2d 93, 102 (2004) (citation omitted), *cert. denied,* 544 U.S. 1052, 161 L. Ed. 2d 1094 (2005). The trial court's orders concerning jury selection are entitled to deference on review. *See State v. Dickens,* 346 N.C. 26, 42, 484 S.E.2d 553, 561 (1997) (noting that the trial court is afforded deference on jury selection rulings because the trial court has "the opportunity to see and hear a juror and has the discretion, based on its observations and sound judgment, to determine whether a juror can be fair and impartial") (citation omitted). Thus, we "must uphold the trial court's findings unless they are clearly erroneous." *State v. Cofield,* 129 N.C. App. 268, 275, 498 S.E.2d 823, 829 (1998) (internal quotation marks and citation omitted).

As an initial matter, we must note that we are precluded from considering in our analysis the reasons given for the State's exercise of the peremptory challenges at issue. These reasons were offered by the prosecutor only after ordered to do so by the trial court "out of an abundance of precaution[,]" after the court expressly held that defendant had not met his burden of establishing a *prima facie Batson* claim.

When a trial court requests that the State explain its reasons for excusing an African American prospective juror after the court has expressly found that defendant failed to establish a *prima facie* claim, step one of the *Batson* analysis does not become moot, and the trial court is not subsequently required to determine whether the State's proffered explanations are nondiscriminatory. *Hoffman*, 348 N.C. at 551-52, 500 S.E.2d at 721. However, when a prosecutor "volunteers his reasons for the peremptory challenges in question before the trial court rules [on] whether the defendant has made a *prima facie* showing, . . . the question of whether the defendant has made a *prima facie* showing becomes moot, and it becomes the responsibility of the trial court to make appropriate findings on whether" the proffered explanation is nondiscriminatory. *State v. Williams,* 343 N.C. 345, 359, 471 S.E.2d 379, 386 (1996) (citations omitted), *cert. denied,* 519 U.S. 1061, 136 L. Ed. 2d 618 (1997).

In the instant case, although the appellate record contains the State's reasons for striking three prospective African American jurors, we are precluded from using this information in the first step of the *Batson* analysis. The trial court clearly ruled that defendant had not made out a *prima facie* case of a *Batson* violation prior to the State's provision of its nondiscriminatory explanations. The record shows that after the trial court initially ruled against defendant's *Batson* challenge, the trial court asked, "out of an abundance of precaution, [whether] the State wish[ed] to offer a

racially-neutral basis for the exercise[.]" At that time, even if the State had *volunteered* its reasons for exercising its peremptory strikes—which it declined to do—our analysis of defendant's *Batson* claim would remain the same, because the State's reasons would have been proffered *after* the trial court's ruling on the matter. Likewise, the fact that the trial court subsequently ordered the State to articulate its nondiscriminatory reasons for the peremptory challenges is irrelevant; the first step of the *Batson* analysis will be considered moot only if "the trial court requires the prosecutor to give his reasons *without ruling on the question of a prima facie showing.*" *Id.* (emphasis added).

Next, we address defendant's argument that the trial court's order on his *Batson* claim is facially deficient. Defendant asserts that in its written order, the trial court "found only that there was not a *prima facie* showing made to establish any violations by the State for its exercise of peremptory challenges." However, given that the court never reached the second step of the *Batson* analysis, this was the only finding that was required. The trial court is only tasked with making "specific findings of fact at each stage of the *Batson* inquiry that it reaches." *State v. Headen*, 206 N.C. App. 109, 114, 697 S.E.2d 407, 412 (2010) (citation omitted). The record on appeal includes the trial court's order on defendant's *Batson* challenge, setting forth the factual basis of the challenge and the court's decision on the matter. Thus, the trial court's order is not facially deficient, as defendant contends.

- 11 -

We now turn to a substantive analysis of the trial court's order finding that defendant failed to establish a *prima facie Batson* claim. From the transcript of the hearing, we are only able to ascertain defendant's race and that the State used three of its four peremptory challenges to remove prospective African American jurors and alternates. However, we do not know the victim's race, the race of key witnesses, questions and statements of the prosecutor that tend to support or refute a discriminatory intent, or the State's acceptance rate of potential African American jurors. Finally, we see nothing in the record from which we can ascertain the final racial composition of the jury.

We will not "assume error by the trial judge when none appears on the record before" us. *State v. Alston*, 307 N.C. 321, 341, 298 S.E.2d 631, 645 (1983) (citation omitted). Without more information regarding the factors set forth in *Hoffman* and *Quick,* defendant has not shown us that the trial court erred in its finding that no *prima facie* showing had been made. Therefore, we uphold the trial court's ruling on the merits of defendant's *Batson* claim.

We would urge all criminal defense counsel that the better practice is to request a verbatim transcription of jury selection if they believe a *Batson* challenge might be forthcoming. However, if that is not initially done, it is incumbent that counsel place before the trial court evidence speaking to all the *Hoffman* factors for

evaluation on appeal.  Without such information, it is highly improbable that such a challenge will succeed.  Such is the pitfall of defendant's case in this appeal.

### III.    Conclusion

For the foregoing reasons, we find no error.

NO ERROR.

Judge ZACHARY concurs.

Judge HAMPSON concurs in part; dissents in part by separate opinion.

HAMPSON, Judge, concurring in part, dissenting in part.

I agree the record before us is minimally sufficient to permit appellate review. *See State v. Sanders*, 95 N.C. App. 494, 499, 383 S.E.2d 409, 412 (1989) (acknowledging that although the "lack of a *voir dire* transcript detracts from our ability to review the substance of the proffered reasons," the record contained "the barest essentials" to permit review: "the racial composition of the jury, the number of black jurors excused, and the State's proffered reasons for their exclusion[,]" while also noting "[t]he record also contains defense counsel's response to the prosecutor's explanations and the trial judge's conclusions"). Consequently, I join in denying the State's Motion to Dismiss the Defendant's Appeal.

This case illustrates the immense difficulty in preserving a *Batson*[2] challenge for appellate review under our existing case law. I agree a verbatim transcript of jury selection is not always necessary to preserve a *Batson* challenge. Indeed, I suspect in many cases the need to make a *Batson* challenge only becomes apparent during the voir dire and after a defendant's opportunity to request complete recordation.[3] Thus, there must be another way to establish the necessary record to preserve the issue for appellate review. *See, e.g., State v. Shelman*, 159 N.C. App. 300, 310, 584

---

[2] *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986).

[3] If there is any lesson to be drawn here from the majority result, it appears it is that the surest (if not the only) way to preserve a *Batson* challenge is to request recordation of jury voir dire in every single case for every single defendant. Of course, this recordation is expressly *not* required by statute in noncapital cases. *See* N.C. Gen. Stat. § 15A-1241(a)(1) (2017).

S.E.2d 88, 96 (2003) (requiring "a transcript *or some other document setting out pertinent aspects of jury selection*" in order to review a defendant's *Batson* challenge (emphasis added)).

However, our existing case law significantly limits a party's ability to preserve the issue absent not only complete recordation but also specific and direct voir dire questioning of prospective jurors (or other evidence) about their race. *See State v. Mitchell*, 321 N.C. 650, 654, 365 S.E.2d 554, 556 (1988) ("Statements of counsel alone are insufficient to support a finding of discriminatory use of peremptory challenges." (citation omitted)); s*ee also State v. Brogden*, 329 N.C. 534, 546, 407 S.E.2d 158, 166 (1991) ("[D]efendant, in failing to elicit from the jurors by means of questioning or other proper evidence the race of each juror, has failed to carry his burden of establishing an adequate record for appellate review."); *State v. Payne*, 327 N.C. 194, 200, 394 S.E.2d 158, 161 (1990) (holding record not adequately preserved where "defendant attempted to support his motion via an affidavit purporting to provide the names of the black prospective jurors"); *Shelman*, 159 N.C. App. at 310, 584 S.E.2d at 96 ("Nor is the transcript of the trial court's discussion with defense counsel regarding defendant's *Batson* challenge an adequate substitute for these factual details[.]").[4]

---

[4] I note a prior decision of this Court touching on related preservation issues is currently pending before our state Supreme Court. *See State v. Bennett*, ___ N.C. App. ___, 821 S.E.2d 476 (2018), *disc. rev. allowed*, 372 N.C. 107, 824 S.E.2d 402, 405 (2019).

*Hampson, J., concurring in part, dissenting in part.*

In light of our case law indicating a trial lawyer cannot recreate the record of an unrecorded jury voir dire to preserve a *Batson* challenge, the obligation to recreate that record, it seems, must fall on the trial judge in conjunction with the parties. *See, e.g.*, N.C. Gen. Stat. § 15A-1241(c) ("When a party makes an objection to unrecorded statements or other conduct in the presence of the jury, upon motion of either party the judge must reconstruct for the record, as accurately as possible, the matter to which objection was made."). Here, for example, the trial court and lawyers cooperated to partially recreate the record. Specifically, the parties each put on the record their respective positions as to each peremptory challenge, establishing that the State used three out of four challenges on African American jurors and another African American juror was excused for cause. These basic facts appear undisputed on the record before us. The one key element left out, however, was the actual make-up of the jury.[5]

I accept the premise that this Court cannot presume error where none appears on the cold record before us. I also take the point that it is an appellant's burden to demonstrate error on the record and the objecting party's burden to establish a prima facie showing under *Batson*. Nevertheless, I am persuaded, on the facts of this case

---

[5] It is significant neither the defense nor the State set out the make-up of the jury on the record. The acceptance rate of jurors would seem to be just as applicable as the rejection rate to either establishing or defending a prima facie *Batson* challenge. Further, the fact the *only* African American prospective jurors discussed were the four excused either for cause or peremptorily could imply those were the only four African American prospective jurors subjected to voir dire. Certainly, there is also no record before us of any African American juror actually being seated in this case.

3

and the admittedly limited record before us, that the challenge by defense counsel to the use of three out of four peremptory challenges on African American jurors places this case sufficiently in line with *State v. Barden* so as to require the trial court to conduct a *Batson* hearing and make specific findings of fact as to whether Defendant had made a prima facie *Batson* challenge.  356 N.C. 316, 344-45, 572 S.E.2d 108, 127-28 (2002) (holding the use of 71.4% of peremptory challenges on African American jurors was supportive of a prima facie *Batson* violation).

*Barden*, on a more complete record, held a prima facie *Batson* violation had been established.  Notably, there, our Supreme Court pointed out there was "no hint of racism" in the prosecutor's questions and even noted the prosecutor accepted two (of seven) African American jurors.  *Id.* at 343-44, 572 S.E.2d at 127.  Rather, the Supreme Court looked to both the acceptance rate and the rate upon which the State exercised its peremptory challenges against African American jurors.[6] Acknowledging a numerical analysis is not necessarily dispositive, the Court nevertheless concluded the numerical analysis was useful in determining a prima facie showing had been made.  *Id.* at 344, 572 S.E.2d at 127 (citation omitted).

I would not go so far on this record as to hold Defendant met his burden to establish a prima facie case for a *Batson* violation.  Rather, I would conclude defense

---

[6] It appears in *Barden* the State peremptorily rejected five of seven African American jurors. At the same time, and at the same rate, the State also exercised five of seven peremptory challenges on African American jurors.  *Id.* at 344, 572 S.E.2d at 127.  Thus, the discussion of the acceptance rate and peremptory-challenge rate in that case mirrors each other.

counsel's *Batson* challenge was sufficiently valid to require the trial court to make specific findings of fact based on the trial court's own first-hand observations and credibility determinations as to the factors present relevant to a prima facie *Batson* inquiry, including the overall make-up of the jury.[7]

Indeed, the trial court's ability to make such first-hand observations of jury selection is exactly why we—as an appellate court—must show great deference to the trial court. *See generally State v. Hoffman*, 348 N.C. 548, 554, 500 S.E.2d 718, 722 (1998) (citation omitted); *see also State v. Nicholson*, 355 N.C. 1, 21, 558 S.E.2d 109, 125 (2002) ("The trial court's determination is given deference on review because it is based primarily on firsthand credibility evaluations." (citation omitted)). This is also why, however, it is so imperative that " '[t]o allow for appellate review, the trial court must make specific findings of fact at each stage of the *Batson* inquiry that it reaches.' " *State v. Headen*, 206 N.C. App. 109, 114, 697 S.E.2d 407, 412 (2010) (quoting *State v. Cofield*, 129 N.C. App. 268, 275, 498 S.E.2d 823, 829 (1998)). Here, the trial court did not make specific findings of fact to permit appellate review regarding the

---

[7] While not determinative, it is also persuasive to me in reaching this conclusion that the trial court, having observed all of this first-hand, felt it necessary to first request and subsequently *order* the State to put its justifications for exercising these peremptory challenges on the record. The practice of ordering a party to give its reasons for exercising a peremptory challenge in the absence of a prima facie *Batson* violation is at odds with the very purpose of peremptory challenges. Indeed, it is the requirement of a prima facie showing of a *Batson* violation that protects a party's right to exercise peremptory challenges without every strike being open to examination. The fact the trial court felt compelled to order the State to put its justifications for exercising these challenges into the record strongly suggests Defendant had met his burden to establish a prima facie showing under *Batson*.

relevant factors set out in *State v. Quick*[8] in determining whether there was a prima facie showing by Defendant under our *Batson* analysis. *See* 341 N.C. 141, 145, 462 S.E.2d 186, 189 (1995) (citation omitted).

Consequently, I would grant the limited remedy of remanding this case to the trial court for specific findings of fact in order to permit appellate review of the trial court's decision, including any further evidentiary proceedings the trial court deems necessary to accommodate its fact finding as to the factors it deems relevant. *Cf. Hoffman*, 348 N.C. at 555, 500 S.E.2d at 723. As such, I respectfully dissent from the majority result affording Defendant no relief from judgment.

---

[8] *State v. Quick*, 341 N.C. 141, 145, 462 S.E.2d 186, 189 (1995) ("Those factors include the defendant's race, the victim's race, the race of the key witnesses, questions and statements of the prosecutor which tend to support or refute an inference of discrimination, repeated use of peremptory challenges against blacks such that it tends to establish a pattern of strikes against blacks in the venire, the prosecution's use of a disproportionate number of peremptory challenges to strike black jurors in a single case, and the State's acceptance rate of potential black jurors." (citation omitted)).