STATE OF NORTH CAROLINA v. JOHNATHON GREGORY HOFFMAN

No. 313A97

(Filed 9 July 1998)

**Jury § 257 (NCI4th)— Batson challenge—prima facie showing—prosecutor's reasons stated—no finding—no opportunity for defendant to reply**

A capital first-degree murder prosecution was remanded for a hearing on the *Batson* issue with regard to two prospective jurors where the victim was white and defendant black; eleven jurors, all white, had been seated; and every black juror who was not excused for cause had been peremptorily challenged by the State, for a total of three peremptory challenges, or one-quarter of the total number of seats in the jury. Step one of the *Batson* analysis, a prima facie showing of racial discrimination, is not intended to be a high hurdle for defendants to cross; rather the showing need only be sufficient to shift the burden to the State to articulate race-neutral reasons, which need not be persuasive or even plausible. The State's explanation will be deemed race-neutral unless a discriminatory intent is inherent in it. Although the trial court here had the State articulate a reason for its challenges for the record each time it ruled that defendant had failed to make a *prima facie* showing, the need for a remand is not obviated because the ruling as to whether the prosecutor intended to discriminate is a question of fact to be left to the trial court. The appellate court does not proceed to step two of the *Batson* analysis when the trial court has not done so. Finally, defendant must be given the opportunity to respond.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Helms (William H.), J., on 14 November 1996 in Superior Court, Union County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to

STATE v. HOFFMAN

[348 N.C. 548 (1998)]

bypass the Court of Appeals as to an additional judgment was allowed 5 December 1997. Heard in the Supreme Court 26 May 1998.

*Michael F. Easley, Attorney General, by Mary D. Winstead, Assistant Attorney General, for the State.*

*Center for Death Penalty Litigation, by Staples Hughes, Staff Attorney, for defendant-appellant.*

WHICHARD, Justice.

The evidence presented at trial tended to show that between 3:30 and 4:00 p.m. on 27 November 1995, defendant entered a jewelry store in Marshville, North Carolina, wearing a ski mask and carrying a sawed-off shotgun. Danny Cook, the victim, was behind the store's display counter when he saw defendant enter. When defendant entered, the victim told two customers in the store to get down. Defendant shot the victim in the chest from a distance of about three feet. Defendant then broke three glass display cases and took various items of jewelry, including some gold rings and necklaces. Defendant also stole two pistols.

On 22 January 1996 defendant was indicted for the first-degree murder of Danny Cook and robbery with a dangerous weapon. Defendant was tried capitally, and the jury returned verdicts finding him guilty of robbery with a firearm and first-degree murder on the theory of premeditation and deliberation and under the felony murder rule. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death. The trial court sentenced defendant accordingly and further sentenced him to 101 to 131 months' imprisonment for the robbery with a firearm conviction.

Defendant presents fourteen issues for review. Because we find *Batson* error in the selection of defendant's jury, we discuss only that issue.

Defendant argues the trial court erred by overruling his objections to the State's use of peremptory challenges to remove four black prospective jurors from the *venire*. Defendant argued to the trial court that the peremptory challenges were racially motivated in violation of the equal protection principles recognized in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986).

**STATE v. HOFFMAN**

[348 N.C. 548 (1998)]

A three-step process has been established for evaluating claims of racial discrimination in the prosecution's use of peremptory challenges. First, defendant must establish a *prima facie* case that the peremptory challenge was exercised on the basis of race. Second, if such a showing is made, the burden shifts to the prosecutor to offer a racially neutral explanation to rebut defendant's *prima facie* case. Third, the trial court must determine whether the defendant has proven purposeful discrimination.

*State v. Cummings*, 346 N.C. 291, 307-08, 488 S.E.2d 550, 560 (1997) (citations omitted), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 873 (1998). Here, each time defendant objected to the State's use of a peremptory challenge to remove a black prospective juror from the *venire*, the trial court ruled that defendant had not made a *prima facie* showing of discrimination. Therefore, the trial court did not proceed to either step two or step three of the *Batson* analysis. We must decide whether the trial court erred when it concluded that defendant had not made a *prima facie* showing of discrimination.

Several factors are relevant to this determination.

Those factors include the defendant's race, the victim's race, the race of the key witnesses, questions and statements of the prosecutor which tend to support or refute an inference of discrimination, repeated use of peremptory challenges against blacks such that it tends to establish a pattern of strikes against blacks in the venire, the prosecution's use of a disproportionate number of peremptory challenges to strike black jurors in a single case, and the State's acceptance rate of potential black jurors.

*State v. Quick*, 341 N.C. 141, 145, 462 S.E.2d 186, 189 (1995). In addition "the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' " *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 97 L. Ed. 1244, 1247-48 (1953)).

The first black prospective juror questioned by the State was Loma Mungo. She was excused for cause based on her opposition to the death penalty. Letitia Brown was the second. She was peremptorily challenged by the State. Defendant objected on *Batson* grounds, arguing that defendant was black, this prospective juror was black, and the victim was white. Defendant also pointed out that of the first

**STATE v. HOFFMAN**

[348 N.C. 548 (1998)]

thirty *veniremen* to be called, only two were black, and both were excused—one for cause, and the other peremptorily. Defendant further argued that the State's questioning of prospective juror Brown differed from that of the other prospective jurors by focusing on her extended family.

The trial court ruled that defendant had not made a *prima facie* showing of racial discrimination. It stated that the questions concerning Brown's extended family were appropriate because she stated that she lived with her grandmother. The court also stated that no pattern of peremptory challenges against black prospective jurors had been established.

This Court has considered similar situations. In *State v. Smith*, 347 N.C. 453, 496 S.E.2d 357 (1998), the Court noted that "[d]efendant has shown only that he is black and that the State peremptorily struck one black prospective juror." *Id.* at 462, 496 S.E.2d at 362. The Court held that "[t]his is insufficient to establish a *prima facie* case of racial discrimination." *Id.* Likewise, in *Quick* we held that the State's peremptory excusal of two of four black prospective jurors was insufficient to establish a *prima facie* case. *Quick*, 341 N.C. at 146, 462 S.E.2d at 189. This was so even though the defendant in *Quick* was black and the victims were white. *Id.* When prospective juror Brown was peremptorily challenged here, defendant had shown only that he was black, the victim was white, and the State had peremptorily challenged a single black prospective juror. As in *Smith* and *Quick*, this does not rise to the level of a *prima facie* case of discrimination. The trial court thus did not err with regard to prospective juror Brown.

Defendant argues that because the trial court also asked the State to articulate its reasons for excusing Brown for the record, step one of the *Batson* analysis became moot, and the trial court was required to determine whether the reasons offered by the State were race neutral. We disagree. This Court has explained:

If the prosecutor volunteers his reasons for the peremptory challenges in question before the trial court rules whether the defendant has made a *prima facie* showing or if the trial court requires the prosecutor to give his reasons without ruling on the question of a *prima facie* showing, the question of whether the defendant has made a *prima facie* showing becomes moot, and it becomes the responsibility of the trial court to make appropriate findings

on whether the stated reasons are a credible, nondiscriminatory basis for the challenges or simply pretext.

> *That rule does not apply in this case because the trial court made a ruling that defendant failed to make a* prima facie *showing before the prosecutor articulated his reasons for the peremptory challenges. . . . Thus, our review is limited to whether the trial court erred in finding that defendant failed to make a* prima facie *showing.*

*State v. Williams*, 343 N.C. 345, 359, 471 S.E.2d 379, 386-87 (1996) (citations omitted) (emphasis added), *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 618 (1997). Here, the trial court clearly ruled there had been no *prima facie* showing of discriminatory intent before the State articulated its reasons. Because we have concluded that the trial court's ruling was not erroneous, we do not consider whether the State offered proper, race-neutral reasons for its peremptory challenge.

The next black prospective juror to be questioned by the State was Josephine McLemire. After questioning, the State expressed its satisfaction with her and passed the panel to defendant for questioning. Before defendant finished questioning the prospective jurors in McLemire's panel, the court excused the prospective jurors and adjourned for the day. Defendant continued his questioning of these jurors the next day. When defendant asked McLemire how long she had held her belief in favor of the death penalty, she replied, "Well, I really don't believe in it. I slept on it last night and I'm still undecided." After a period of questioning by defendant, the State, and the trial court, McLemire, the third black prospective juror, was excused for cause.

The fourth black prospective juror, Anita Cox, was peremptorily challenged by the State. This was the State's second peremptory challenge of a black prospective juror. Defendant objected on *Batson* grounds, arguing that the peremptory excusal of two out of four black prospective jurors established a pattern tending to show discriminatory intent. The trial court ruled that defendant had failed to make a *prima facie* showing of discrimination in the State's use of its peremptory challenges. The court noted that no pattern had been established, the State's selection of jurors was being done in a racially neutral manner, and the State had previously passed a black prospective juror, McLemire, to defendant for questioning.

This situation is similar to *State v. Quick*, 341 N.C. 141, 462 S.E.2d 186, where two of four black prospective jurors were peremptorily excused by the State. The cases differ, however, because the two black prospective jurors passed by the State in *Quick* actually served, *id.* at 146, 462 S.E.2d at 189, while the two black prospective jurors not peremptorily challenged by the State here were excused for cause. In its consideration of defendant's arguments, the trial court here appropriately noted that the State had originally expressed its satisfaction with one of these prospective jurors by passing the panel to defendant for questioning. This prospective juror, Anita Cox, also stated that she had been represented by defendant's trial counsel on two previous occasions. Thus, the State may have feared a bias in favor of defendant. Taking all of these matters into consideration, we hold that the trial court did not err when it ruled that defendant had failed to make the requisite *prima facie* showing at this juncture.

In his brief, defendant states that "apparently" the fifth black prospective juror was excused for cause. The record is not clear as to whether this is an accurate statement. For purposes of our analysis, however, it is irrelevant.

The next black prospective juror to be peremptorily challenged by the State was James Rorie. At this point, eleven jurors, all white, had been seated. Defendant objected on *Batson* grounds, arguing that Rorie was the last black *veniremen* in the original pool and that the State had no reason to excuse him except race. The trial court observed that "[a]ll of the questions to all of the jurors exhibited primarily the same sorts and types of questions" and ruled that "[t]here's been no *prima facie* showing that the juror has been selected . . . in any other than a racially neutral manner." We disagree.

At this point eleven white jurors had been seated in a case involving a black defendant and a white victim. The State had peremptorily challenged every black juror who was not excused for cause, for a total of three peremptory challenges against black prospective jurors, or one-quarter of the total number of seats in the jury. Step one of the *Batson* analysis, a *prima facie* showing of racial discrimination, is not intended to be a high hurdle for defendants to cross. Rather, the showing need only be sufficient to shift the burden to the State to articulate race-neutral reasons for its peremptory challenge. That too is not a heavy burden. The State's race-neutral explanation need not be persuasive or even plausible; it will be deemed race-neutral unless a discriminatory intent is inherent in it. *Purkett v. Elem*, 514 U.S. 765,

768, 131 L. Ed. 2d 834, 839 (1995). We therefore hold that the trial court erred as a matter of law when it ruled that defendant had failed to make a *prima facie* showing that the State's peremptory challenge of prospective juror Rorie was exercised on the basis of race.

The next black *venireman* to be considered was Lori Brace. She was peremptorily challenged by the State during the selection of the two alternate jurors. Again, defendant objected on *Batson* grounds, arguing that the State had excused every black prospective juror and that there were no racially neutral reasons for excluding this prospective juror. In response, the State contended that defendant had not made a *prima facie* showing. The trial court stated, "they're getting close," but ultimately ruled that defendant had failed to make a *prima facie* showing. For the reasons stated above, this too was error as a matter of law.

Each time the trial court ruled that defendant had failed to make a *prima facie* showing of racial discrimination, the court, in an attempt to facilitate appellate review, had the State articulate for the record its reasons for challenging the prospective juror. For reasons hereinafter stated, however, this does not obviate the need for a remand.

First, we have stated that "[w]hether the prosecutor intended to discriminate against the members of a race is a question of fact," and as a result "the trial court's ruling . . . must be accorded great deference by a reviewing court." *State v. Floyd*, 343 N.C. 101, 104, 468 S.E.2d 46, 48, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 170 (1996). This is because "often there will be little evidence except the statement of the prosecutor, and the demeanor of the prosecutor can be the determining factor. The presiding judge is best able to determine the credibility of the prosecutor." *Id.* Thus, we must leave this question of fact for the trial court. Second, we have held that when a trial court makes "a ruling that defendant failed to make a *prima facie* showing before the prosecutor articulated his reasons for the peremptory challenges . . .[,] our review is limited to whether the trial court erred in finding that defendant failed to make a *prima facie* showing." *Williams*, 343 N.C. at 359, 471 S.E.2d at 386-87. We do not proceed to step two of the *Batson* analysis when the trial court has not done so. Finally, although the State was given an opportunity to articulate its reasons for its peremptory challenges, defendant was not given an opportunity to respond. Defendant must be accorded this opportunity; we have held that "[t]he defendant . . . has a right of surrebuttal to show

**STATE v. HOFFMAN**

[348 N.C. 555 (1998)]

that the explanations are pretextual." *State v. Peterson*, 344 N.C. 172, 176, 472 S.E.2d 730, 732 (1996).

Accordingly, we remand the case to the Superior Court, Union County, for a hearing on the *Batson* issue with regard to prospective jurors James Rorie and Lori Brace. The trial court is directed to hold this hearing, make findings of fact and conclusions of law, and certify its order to this Court within sixty days of the filing date of this opinion. We shall then pass upon defendant's other assignments of error if it remains necessary to do so.

REMANDED.