STATE OF NORTH CAROLINA
v.
ROBERT EARL WILDS
No. COA08-375
Court of Appeals of North Carolina.
Filed December 16, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Kevin Anderson, for the State.
Geoffrey W. Hosford, for defendant-appellant.
WYNN, Judge.
Following his convictions on charges of second-degree rape, false imprisonment, assault inflicting physical injury by strangulation, simple assault, and two counts of second-degree sexual offense, Defendant appeals. After careful review, we hold that Defendant received a fair trial free of prejudicial error.
During jury selection, Defendant objected to the composition of the jury venire and the State's use of peremptory challenges. Because Defendant makes a Batson challenge on appeal, it is relevant to note that the venire was originally composed of fifty-four prospective jurors, twelve of whom were African-American. The State peremptorily struck one Caucasian prospective juror and three African-American prospective jurors without objection from Defendant. As a result, no African-Americans were among the twelve impaneled jurors. During selection of alternate jurors, Defendant objected to the composition of the jury venire and the State's use of a peremptory challenge to remove a fourth African-American prospective juror. On his own initiative, the trial judge articulated race-neutral possibilities the prosecutor could have used to justify the State's peremptory challenge of the fourth African-American prospective juror. The trial judge also noted that Defendant and the alleged victim are of the same race and denied Defendant's Batson objection. Likewise, the trial judge denied Defendant's motion to strike the jury venire, finding no evidence to "support a finding that the method of selection of jurors in this county, that is drawing, excusing, and selecting jurors for jury service, is improper in any fashion."
After the trial court instructed the jury, and during its deliberations, defense counsel learned from a conversation with the prosecutor that released alternate juror Saundra Autry had knowledge of Defendant's prior criminal record. At some point later, defense counsel observed Ms. Autry conversing with impaneled juror Bonita Powell in the parking lot outside the courthouse. Concerned that Ms. Autry might be discussing her knowledge of Defendant's prior criminal record with Ms. Powell, defense counsel requested inquiry of Ms. Powell to determine what she and Ms. Autry discussed.
In response, the trial court called Ms. Powell into the courtroom and generally inquired about her conversation with Ms.Autry. After Ms. Powell's testimony, defense counsel moved for a mistrial. The trial court denied the motion, finding "nothing within that conversation that would indicate that there is any error or defect or prejudice to the defendant."
During deliberations, the jury delivered a note to the trial judge requesting a written copy of the instructions. The judge denied that request, but informed the jury in open court that it could return another note asking for additional oral instruction if necessary. The jury convicted Defendant of second-degree rape, false imprisonment, assault inflicting physical injury by strangulation, simple assault, and two counts of second-degree sexual offense without receiving the additional instruction it initially requested. The trial court sentenced Defendant to two consecutive terms of 107 to 138 months' imprisonment.
On appeal, Defendant argues the trial court erred by: (I) overruling his Batson objection to the prosecutor's use of peremptory challenges; (II) denying his motion to strike the jury venire on the ground that African-Americans were disproportionately under represented; (III) entering judgment on the assault inflicting physical injury by strangulation charge because the indictment was fatally defective; (IV) denying his motion for mistrial resulting from juror misconduct; and (V) failing to re-instruct the jury as requested. We disagree.

I.
Defendant first argues that the trial court erred when it ruled that he had not shown a prima facie Batson violation. On review of a Batson objection, the trial court's findings will be upheld on appeal unless the "'reviewing court on the entire evidence [would be] left with the definite and firm conviction that a mistake ha[d] been committed.'" State v. Chapman, 359 N.C. 328, 339, 611 S.E.2d 794, 806 (2005) (quoting Hernandez v. New York, 500 U.S. 352, 369, 114 L. Ed. 2d 395, 412 (1991)). "Thus, the standard of review is whether the trial court's findings are clearly erroneous." Id. Relevant factors to whether a defendant has shown a prima facie Batson violation include:
the defendant's race, the victim's race, the race of the key witnesses, questions and statements of the prosecutor which tend to support or refute an inference of discrimination, repeated use of peremptory challenges against [African-Americans] such that it tends to establish a pattern of strikes against [African-Americans] in the venire, the prosecution's use of a disproportionate number of peremptory challenges to strike [African-American] jurors in a single case, and the State's acceptance rate of potential [African-American] jurors.
State v. Hoffman, 348 N.C. 548, 550, 500 S.E.2d 718, 720 (1998) (citation omitted). However, the challenge of an African-American prospective juror when the defendant is also African-American does not, standing alone, establish a prima facie showing of a Batson violation. State v. Lawrence, 352 N.C. 1, 15, 530 S.E.2d 807, 816 (2000).
In this case, Defendant points out that the prosecutor used five total peremptory challenges to exclude four African-Americans and one Caucasian. Defendant also emphasizes that no African-Americans were ultimately impaneled on the jury. However, Defendant has identified no questions or comments by the prosecutor that suggest racial discrimination. Indeed, the trial judge found that "there has been no statement or question . . . that would permit an inference that the State was exercising peremptory challenges because of race." Furthermore, Defendant and the alleged victim in this case are both African-American, making racial discrimination in jury selection less likely. See Chapman, 359 N.C. at 342, 611 S.E.2d at 807-08 (citing State v. Blakeney, 352 N.C. 287, 309, 531 S.E.2d 799, 815 (2000), cert. denied, 531 U.S. 1117, 148 L. Ed. 2d 780 (2001)). Finally, the trial judge articulated race-neutral reasons for excusing the challenged alternate juror. Accordingly, the trial judge's denial of Defendant's Batson objection was not clearly erroneous. This assignment of error is overruled.

II.
In his second assignment of error, Defendant argues that African-Americans were disproportionately under-represented in the jury venire, denying him the right to be tried by a jury of his peers.
A defendant may establish a prima facie violation for disproportionate representation in a venire by showing:
(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.
State v. Williams, 355 N.C. 501, 549, 565 S.E.2d 609, 637 (2002) (citing Duren v. Missouri, 439 U.S. 357, 58 L. Ed. 2d 579, 586-87 (1979)). Regarding the second prong, North Carolina courts have held that disparities as large as 16% are not, standing alone, sufficient to establish a prima facie case of disproportionate representation. State v. Bowman, 349 N.C. 459, 468, 509 S.E.2d 428, 434 (1998) ("Even if we consider only defendant's data, a disparity of 16.17%, we cannot conclude that this figure, standing alone, is unfair or unreasonable."); see also State v. Price, 301 N.C. 437, 447, 272 S.E.2d 103, 110 (1980) (holding that a disparity of 14% does not, standing alone, constitute unfair or unreasonable representation).
Here, the jury venire was composed of fifty-four total prospective jurors, twelve of whom were African-American. Accordingly, the jury venire was composed of 22% African-Americans. Defendant alleges that 33% of the Columbus County population, from which his jury venire was drawn, is African-American. He contends that the 11% disparity constitutes disproportionate representation.
Even taking Defendant's statistics as true, his argument must fail. The 11% disparity Defendant challenges is lower than larger disparities held not to be unfair or unreasonable in Bowman and Price. Furthermore, Defendant offered no evidence tending to show systematic exclusion. An 11% disparity is, as a matter of law, insufficient to establish disproportionate representation in a jury venire without additional evidence of systematic exclusion. This assignment of error is overruled.

III.
Next, Defendant argues that the trial court never acquired jurisdiction over the assault inflicting physical injury by strangulation charge because the indictment was fatally defective. On this charge, the indictment states, in relevant part:
the defendant named above unlawfully, willfully and feloniously did assault [the victim] by placing his hands upon her throat and applying pressure causing her to be unable to breathe, against the form of the statute. . . .
The indictment also cites N.C. Gen. Stat. § 14-32.4(b) (2007), the assault inflicting physical injury by strangulation statute. Nonetheless, Defendant contends that the indictment was fatally defective because it does not specifically allege that the alleged victim suffered physical injury.
Pursuant to our General Statutes, an indictment must contain
[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.
N.C. Gen. Stat. § 15A-924(a)(5) (2007). "An indictment or criminal charge is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offense. The indictment must also enable the court to know what judgment to pronounce in the event of conviction." State v. Coker, 312 N.C. 432, 434-35, 323 S.E.2d 343,346 (1984). When the indictment is sufficient to serve these purposes, it is not rendered invalid by the omission of specific factual allegations that may emerge later in the judicial process. See State v. Gregory, 223 N.C. 415, 420, 27 S.E.2d 140, 143 (1943).
We hold that the indictment in this case was not fatally defective. It alleged specific conduct constituting the offense defined in section 14-32.4(b) by stating that Defendant "plac[ed] his hands upon her throat and appl[ied] pressure . . . ." Moreover, the indictment explicitly cited the assault inflicting physical injury by strangulation statute, putting Defendant on notice of the precise offense he was charged with committing, and enabling the trial court to pronounce a judgment upon his conviction. Finally, Defendant expressed no uncertainty about the assault inflicting injury by strangulation charge, either by motion or objection, until this appeal. This assignment of error is overruled.

IV.
In his fourth assignment of error, Defendant contends that the trial court should have granted his motion for mistrial because released alternate juror Saundra Autry had inappropriate communications with impaneled juror Bonita Powell.
Whether to declare a mistrial is within the trial court's discretion. State v. Wood, 168 N.C. App. 581, 583, 608 S.E.2d 368, 370 (2005) (citing State v. Ward, 338 N.C. 64, 92-93, 449 S.E.2d 709, 724 (1994), cert. denied, 514 U.S. 1134, 131 L. Ed. 2d 1013 (1995)). However, the trial court "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2007). "A mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." Wood, 168 N.C. App. at 583, 608 S.E.2d at 370 (quoting State v. Blackstock, 314 N.C. 232, 243-44, 333 S.E.2d 245, 252 (1985)). The trial court's ruling will be disturbed on appeal only if it is so clearly erroneous as to amount to a manifest abuse of discretion.Id. (citation omitted).
Here, the trial court conducted an inquiry of Ms. Powell to determine if she obtained any information from Ms. Autry that could result in substantial and irreparable prejudice to Defendant. In relevant part, Ms. Powell testified:
As I was waking [sic] by her, I said  I said are you released? And she said yes. I said well do you have to call back? She said call me after it's over and let me know, and she gave me her number. And I said no, that's well I took her number but I said do you have to call back? And she said, no, I'm released. I said well what if one of the rest of us went out and got in a wreck or something. She said I don't know but I'm released. That was it, that was the extent of it.
The trial court found that the conversation was "remotely connected with the case but more towards the administrative or mechanics of the case." That finding is supported by Ms. Powell's testimony, which reveals that she learned no information from Ms. Autry that was prejudicial to Defendant. We hold that the trial court did not abuse its discretion by denying Defendant's motion for a mistrial.

V.
Finally, Defendant argues that the trial court abused its discretion by refusing to re-instruct the jury on the substantive offenses after the jury requested a written copy of the laws during its deliberations.
General Statutes section 15A-1234 addresses additional instructions to a deliberating jury:
(a) After the jury retires for deliberation, the judge may give appropriate additional instructions to:
(1) Respond to an inquiry of the jury made in open court; or
(2) Correct or withdraw an erroneous instruction; or
(3) Clarify an ambiguous instruction; or
(4) Instruct the jury on a point of law which should have been covered in the original instructions.
N.C. Gen. Stat. § 15A-1234(a) (2007). "Whether or not to give additional instructions rests within the sound discretion of the trial court and will not be overturned absent abuse of that discretion. Where the trial court fails to exercise its discretion, however, such failure constitutes reversible error." State v. Bartlett, 153 N.C. App. 680, 685, 571 S.E.2d 28, 31 (2002) (citations omitted). Where the trial judge's response to a request for additional instruction "reflects his thoughts and reasoning on the propriety of providing an additional instruction," he has exercised his discretion. Id. Here, Defendant argues that the jury's request for further instruction reflects its "obvious need for further clarification," and that the trial judge's denial of that request cannot be a result of reasoned decision-making. However, the following statement in the transcript fully reflects the trial judge's reasoning:
Jurors may be content not to have [instruction] again orally. They may just want it in writing. And when they find the Court's not giving that to them, then they may be content to proceed on.
Things change over night. People have had time to rest and enter the matter again anew and refreshed and they may not even need additional instruction.
Thereafter, the trial judge clearly informed the jury that it could request additional oral instruction by returning another note. Instead, the jury continued with deliberations and reached its verdict. Therefore, the trial judge's response to the jury's request for additional instruction reflects his thoughts and reasoning. Accordingly, this assignment of error is overruled.
No error.
Judges BRYANT and ARROWOOD concur.
Report per Rule 30(e).